**Opinion issued July 9, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———

**NO. 01-12-00430-CV**

———

**STEVEN ALLENDER, Appellant**

**V.**

**KATY CHAMBER OF COMMERCE D/B/A KATY AREA CHAMBER OF COMMERCE, AND KATY CHAMBER OF COMMERCE D/B/A KATY RICE HARVEST FESTIVAL, Appellees**

———

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2008-59572**

———

## MEMORANDUM OPINION

This is a personal injury case arising out of an automobile-pedestrian accident.   Plaintiff-appellant Steven Allender was struck by a car driven by

defendant Judith Cooper at the 2006 Katy Rice Harvest Festival, which was organized by defendant-appellees Katy Chamber of Commerce d/b/a Katy Area Chamber of Commerce, and Katy Chamber of Commerce d/b/a Katy Rice Harvest Festival ("Katy defendants"). Allender sued both Cooper and the Katy defendants. Allender settled with Cooper, and the trial court granted summary judgment in favor of the Katy defendants. Allender timely appealed. We affirm in part and reverse and remand in part.

## BACKGROUND

Allender's wife had a vender booth at the 2006 Katy Rice Harvest Festival. Vender booths were setup along each side of Third Street. During festival hours, the area was closed off to vehicles. When the festival ended, however, booth operators were allowed to drive to their booths to dismantle them.

Allender drove his vehicle into the festival and assisted his wife in dismantling her booth. Defendant Cooper also had a booth at the festival. After Cooper packed up her booth and was driving down Third Street, she struck Allender with her vehicle.

The safety traffic plan for the festival was developed by the Katy defendants and the Katy police department. There were off-duty police officers at the two vehicle gates, and between twenty and twenty-four police officers or traffic

2

volunteers on the festival site. Lizzy Davis, the volunteer at the intersection of Third Street and Avenue C, was wearing a bright orange vest and had a flashlight. She saw Cooper's vehicle driving towards her "too fast" and put up her hands instructing Cooper to slow down. Cooper ignored her, did not slow down, and drove right past her. Davis then "began to scream and yell to alert the vendors who were dismantling their booths." Cooper then hit Allender with her car.

Allender's October 7, 2008 Original Petition alleged negligence against both Cooper and the Katy defendants. On October 16, 2009, Allender and the Katy defendants attended a mediation. According to Allender, the Katy defendants offered $5,000 to settle the case at mediation, and reiterated that offer on January 27, 2010. The Katy defendants never indicated that this settlement offer was withdrawn, and Allender attempted to accept that offer on April 15, 2010. Allender learned on April 20, 2010 that the offer was "off the table." He filed a motion to enforce the alleged settlement, which the trial court denied on May 17, 2010.

Allender settled with Cooper, and his claims against her were severed on July 1, 2010. On September 10, 2010, Allender filed Plaintiff's Second Amended Original Petition. This amended petition omitted the claims against Cooper, reiterated the same negligence claims against the Katy Defendants, and added a

3

claim against the Katy defendants claim for breach of a settlement agreement.

The Katy defendants later filed a Traditional and No Evidence Motion for Summary Judgment addressing only the merits of the negligence claim, which the trial court granted on January 18, 2012. On February 17, 2012, Allender filed a Motion for New Trial, seeking reconsideration of the trial court's summary judgment on his negligence claim. On February 27, 2012, the trial court signed a final judgment that Allender take nothing on his claims against the Katy Defendants. On March 23, 2012, Allender's Motion for New Trial was denied. Allender filed his notice of appeal on April 27, 2012.[1]

## ISSUES ON APPEAL

Allenger brings two issues on appeal:

1. "The trial judge committed fundamental error in light of Rule 65 of the T.R.C.P, a mandatory rule. The trial court signed an order granting a summary judgment Appellees filed against Appellant's First Amended Original Petition, an abandoned pleading under Rule 65."

2. "The trial judge committed error by granting a motion for summary judgment where the evidence failed to establish as a matter of law that here was no genuine issue of a material fact."

---

[1] Allender's appeal is timely because his motion for new trial, filed after the trial court's interlocutory summary judgment but before the court's final judgment, nonetheless extended the time period for appealing the final judgment because the motion "complains of error brought forward in the subsequent judgment." *Bradley v. Peters*, No. 01-07-00081-CV, 2007 WL 4284659, at *2 (Tex. App.—Houston [1st Dist.] Dec. 6, 2007, no pet.).

4

## RELEVANT PLEADINGS

In his first issue, Allender argues that, according to Rule 65 of the Texas Rules of Civil Procedure, his amended petition took the place of his original petition. He complains that the Katy defendants filed their motion for summary judgment with reference to his original petition, not his amended petition that was already on file when the motion for summary judgment was filed. Because the Katy defendant's motion "attacked an abandoned pleading" rather than his most recent live pleading, Allender contends that the trial court erred in granting summary judgment.

In response, the Katy defendants contend Allender waived this issue by failing to raise it in his response to their motion for summary judgment. Alternatively, the Katy defendants argue that Allender "failed to show harm from the reference to the prior pleading," as even Allender admitted that he sued for "the same cause of action" in his amended petition. The Katy defendants quote the negligence allegations in the original and amended petition, pointing out that the amended petition "restated almost verbatim" the negligence allegations from Allender's original petition. Because a motion for summary judgment directed at an earlier petition has been held to encompass a challenge to later-filed claims when those claims are identical to the earlier claims, the Katy defendants argue

5

that the trial court did not err in granting its summary judgment. *E.g., Ehler v. LVDCD, L.C.*, 319 S.W.3d 817, 820 (Tex. App.—El Paso 2010, no pet.).

The Katy defendants acknowledge that Allender's amended petition added a second cause of action for breach of an alleged settlement agreement. But, according to the Katy defendants, the trial court had already disposed of the merits of that claim before it was added to the petition by denying Allender's earlier Motion to Enforce Settlement Agreement.

Allender correctly argues that a plaintiff's timely filed amended pleading supersedes all previous pleadings and becomes the controlling petition in the case regarding theories of recovery. TEX. R. CIV. P. 65; *J.M. Huber Corp. v. Santa Fe Energy Res., Inc.*, 871 S.W.2d 842, 844 (Tex. App.—Houston [14th Dist.] 1994, writ denied). And, contrary to the Katy defendants' argument, the non-movant does not waive error by not complaining in a response to a motion for summary judgment that the movant's motion addresses only some of the non-movant's live claims, or addresses claims that have been abandoned or superseded. *Chessher v. Sw. Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983).

The Katy defendants are correct, however, that if "a motion for summary judgment [directed at an earlier-filed petition] is sufficiently broad to encompass later-filed claims, the movant need not amend his motion" for it to effectively

6

challenge the claims in a later-filed petition. *Espeche v. Ritzell*, 123 S.W.3d 657, 664 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The question here, then, is whether the Katy defendants' motion for summary judgment encompassed the claims in Allender's amended petition.

With regard to his negligence allegations against the Katy defendants, in Allender's original petition, he stated that "the Katy Defendants controlled the premises on which the incident occurred." He articulates the proximate cause of his damage as "[f]ailing to keep the premises in a safe manner."

Allender's amended petition omits his earlier negligence allegations about Cooper, but repeats the same negligence allegations against the Katy defendants, stating again that "the Katy Defendants controlled the premises on which the incident occurred," and alleging that they were negligent by "[f]ailing to keep the premises in a safe manner." Because the Katy defendants' motion for summary judgment addressing the negligence allegations in Allender's original petition necessarily addresses the allegations repeated in his amended petition, we hold that the trial court did not err in ruling on the merits of the Katy defendants' motion with regard to Allender's negligence claim against the Katy defendants.

The trial court did, however, err in granting a take-nothing judgment against Allender, given that his live petition contained a second, unadjudicated claim for

7

breach of the parties' alleged settlement agreement. "It is axiomatic that one may not be granted judgment as a matter of law on a cause of action not addressed in a summary judgment proceeding." *Chessher*, 658 S.W.2d at 564. "The movant . . . must establish his entitlement to a summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of his cause of action or defense as a matter of law." *Id.* (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979)).

The Katy defendants never requested summary judgment on Allender's breach of settlement agreement claim, but assert here that the trial court's *denial* of Allender's Motion to Enforce Settlement Agreement was an adjudication on the merits of that claim. But that denial does not entitle the Katy defendants to judgment as a matter of law. In other words, the trial court's denial of Allender's motion reflects only its determination that Allender had not conclusively established his right to relief on that claim. *Cf. Vills. of Greenbriar v. Torres*, 874 S.W.2d 259, 262 (Tex. App.—Houston [1st Dist.] 1994, writ denied) ("[A] denial of summary judgment is not a final adjudication of any matter.").

In sum, the trial court did not err by ruling on the Katy defendant's motion for summary judgment with regards to the negligence claim that was presented in both Allender's original and amended petition. The trial court did, however, err by

8

granting final judgment in the Katy defendants' favor on the unadjudicated claim for breach of an alleged settlement agreement. We thus sustain Allender's first issue in part, and remand his breach-of-settlement-agreement claim to the trial court for further proceedings consistent with this opinion.[2]

## SUMMARY JUDGMENT

In his second issue, Allender contends that the trial court erred by granting summary judgment on his negligence claim because he raised a genuine issue of material fact. Specifically, Allender argues that the evidence creates a fact issue about whether Katy defendants created a dangerous condition. He asserts that (1) the Katy defendants "had the exclusive right to control the roadway," (2) "established its standard of care over the festival streets by its documentation to the City of Katy, vendors and exhibitors," and (3) "breached its own standard of care by creating a hazard and a hazardous activity."

Allender's theory is that the Katy defendants controlled the decision to close off the street for a certain period of time. His argument in the trial court focused

---

[2] We are not required to remand the entire case, but instead we consider the merits of the negligence claim that was properly considered on the Katy defendants' motion for summary judgment. *Cf. Positive Feed, Inc. v. Guthmann*, 4 S.W.3d 879, 881 (Tex. App.—Houston [1st Dist] 1999, no pet.) ("When, as here, a trial court grants more relief by summary judgment than requested, by disposing of issues never presented to it, the interests of judicial economy demand that we reverse and remand as to those issues, but address the merits of the properly presented claims.").

primarily on the timing of the accident. On the Sunday of the accident, the festival closed at 6:00 p.m. The vendor contracts contained clauses stating "no vehicles are allowed in the Katy Rice Harvest Festival after 8:30 AM Saturday and before 6:30 PM Sunday," and "[b]ooths may not be dismantled until 6:30 p.m. on Sunday." The contracts also require vendors to agree they "will wait until all booths are dismantled and a Katy Rice Harvest Festival Official approves re-entry after 6:30 p.m. Sunday evening. At this time, vehicles may enter the Katy Rice Harvest Festival Area."

Allender cited Cooper's estimate in her deposition testimony that she was actually permitted to enter the festival with her car between 6:15 and 6:20. He acknowledges that the Incident Report filled out by an employee of the Chamber of Commerce states that the accident occurred between 6:30 and 7:00, and that the police report listed the time the incident was reported as 7:02 p.m., but he contends that at least a fact issue exists about the time. The time of the accident is significant to his argument because he contends it was the act "closing the festival at 6:00 p.m., and then began to allow vehicles to drive into the festival grounds prematurely, causing endangerment to all people at the festival."

In response, the Katy defendants argue that Allender has not raised a fact issue on either a premises liability or ordinary negligence claim. To the extent

10

Allender argues that there was a dangerous condition created by what Allender characterized as the "lack of safety measures," i.e., "no speed limit signs, no traffic guards, no safety cones," the Katy defendants insist that assertion is simply contrary to the undisputed and conclusive evidence that there was a traffic safety plan and numerous volunteers and police officers directing vehicles. The Katy defendants point out that Allender failed to argue, much less raise a fact issue, about "the reasonableness of the traffic and safety plan in effect at the time of the incident" or the Katy defendants "failure to exercise reasonable care to reduce or eliminate any potential risk."

As for the timing of the accident, the Katy defendants assert that Allender has failed to demonstrate how the Katy defendants allowing vehicles into the area a few minutes early (even if true) could have proximately caused his accident. They point out that he cannot argue that "he was unaware that vehicles were allowed into" the area, as the evidence shows that Allender had "just waited in line for the entrances to reopen, driven his own vehicle up next to his wife's booth, and was in the process of carrying 'a large metal panel' to his own vehicle when he was struck."

The Katy defendants also argue that if Allender's petition is interpreted to assert a general negligence claim, there is "no evidence that the Katy Chamber

11

breached a duty to appellant," or that "such a breach proximately caused Mr. Allender's damages." Specifically, the Katy defendants argue that Allender has not shown that, by their entering into a vender agreement with Allender's wife stating time for vehicle traffic for the festival, they created a duty owed to Allender to not deviate from those times. And, according to the Katy defendants, there is no evidence of a breach of whatever duty Allender relies upon or causation.

Finally, the Katy defendants assert that, to the extent Allender claims that the Katy Chamber "created a hazardous condition by allowing vehicles into the area prior to the booths being dismantled," Allender has "no evidence as to how this created a hazardous condition." Instead, "the evidence shows that Mr Allender's injuries were caused by a woman driving unsafely who had ignored warnings from a volunteer that was directing traffic, combined with Mr. Allender's own failure to keep a proper lookout for vehicles traveling through the festival, just as his vehicle was traveling mere minutes before the accident." Thus, the Katy defendants argue that we should affirm the trial court's summary judgment.

### A. Standard of Review

The Katy defendants raised both traditional and no-evidence grounds in their motion for summary judgment, and the trial court did not specify on which grounds it based its judgment. *See* TEX. R. CIV. P. 166a(c), (i). In reviewing a

grant of summary judgment, we consider the evidence in the light most favorable to the nonmovant. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). When, as here, the trial court does not specify the grounds for its grant of summary judgment, we must affirm the summary judgment if any of the theories presented to the court and preserved for appeal are meritorious. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

A no-evidence summary judgment must be granted unless the non-movant produces competent summary-judgment evidence raising a genuine issue of material fact on the challenged elements. TEX. R. CIV. P. 166a(i); *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008). We apply the same legal-sufficiency standard of review that we apply when reviewing a directed verdict. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). Applying that standard, a no-evidence point will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to

prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *see City of Keller*, 168 S.W.3d at 810. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact, and the legal effect is that there is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

To prevail on a traditional Rule 166a(c) summary-judgment motion, a movant must prove that there is no genuine issue regarding any material fact and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). A defendant moving for summary judgment must either (1) disprove at least one element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of an affirmative defense to rebut the plaintiff's cause. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). The movant must conclusively establish its right to judgment as a matter of law. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). If the movant meets its burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

**B. Analysis**

We conclude that the trial court's summary judgment was correct—regardless of whether Allender's claim is interpreted as premises liability or general negligence—because Allender presented no evidence of a common element, i.e., causation. In *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006), the supreme court addressed whether a no-evidence summary judgment was proper on a premises-liability claim involving a pedestrian struck by a car in a parking lot. The court explained that the "proximate cause element has two components: cause-in-fact and foreseeability." *Id.* (citing *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003)); *see also Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995) (articulating same proximate cause elements of ordinary negligence claim). "The test for cause-in-fact, or "but-for" causation, is whether (1) the act or omission was a substantial factor in causing the injury and (2) without the act or omission the harm would not have occurred." *LMB*, 201 S.W.3d at 688.

In response to the parking-lot owner's no-evidence motion for summary judgment in *LMB*, the plaintiff produced a treating physician's affidavit stating, "In reasonable medical probability, the death of Ernestina Moreno resulted from her weakened condition caused by the accident in question. Therefore, in my opinion,

15

the conduct of [premises owner] substantially caused Ernestina Moreno's injuries and death." *Id*. At 687–88. The supreme court articulated the plaintiff's burden to raise a fact issue in response to the no-evidence summary judgment motion, and explained why this affidavit fell short:

> [T]he Morenos had the burden to produce summary judgment evidence that an accident such as that involving Ernestina Moreno, or some similar occurrence, was a foreseeable result of a failure by LMB to use reasonable care to reduce or eliminate an unreasonably dangerous premises condition, and that LMB's failure was a substantial factor in causing Ernestina Moreno's injuries and death. Mere proof that Ernestina Moreno was injured in LMB's parking lot is not proof of such proximate cause. *See Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 551–52 (Tex. 2005) (holding that summary judgment was proper when there was no evidence that any of the premises owner's "acts or omissions were a substantial factor in causing" the plaintiff's injuries); *Southwest Key Program, Inc. v. Gil–Perez*, 81 S.W.3d 269, 274 (Tex. 2002).

> Dr. Garza's assertion in his affidavit that "in my opinion, the conduct of [premises owner, LMB] substantially caused Ernestina Moreno's injuries and death" does not comprise evidence that some premises condition or an act or omission of LMB was causally related to the accident and Ernestina Moreno's resulting injuries. His statement fails to address any particular condition of the premises, conduct of LMB, or underlying facts on which his conclusion is based. His affidavit does not set out specific facts from which a jury could reasonably infer that LMB knew or should have known of some unreasonably dangerous condition of the premises which was involved in the accident. Nor does his affidavit amount to more than a bare conclusion that some unknown conduct of LMB was a substantial cause of the occurrence, or that absent the conduct, the incident would not have occurred. In sum, the affidavit does not contain competent summary judgment evidence of either cause-in-fact or foreseeability. *See Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex.

16

1999); *Skillern & Sons, Inc. v. Rosen*, 359 S.W.2d 298, 305 (Tex. 1962); *see also McIntyre v. Ramirez*, 109 S.W.3d 741, 750 (Tex. 2003).

*Id*. at 688–89.

Here, Allender asserts in his brief that the evidence raises a fact issue on negligence because,

> First, the [Katy defendants] had the exclusive right to control the roadway when [he] was injured. Second, the [Katy defendants] established its standard of care over the festival streets by its documentation to the City of Katy, vendors and exhibitors. Third, [the defendants] breached its own duty of care by creating a hazard and hazardous activity.

He complains that the Katy defendants "directed cars into a pedestrian thoroughfare without taking any safety measures – that's a created hazard." He contends that, because the Katy defendants created the hazard, they necessarily knew about the hazard and are thus liable for his injury.

According to Allender, vehicles were allowed into the festival area around 6:15, despite the vendor agreements providing that vehicles would not be allowed in until 6:30. The specific alleged breach of the duty of care that Allender articulates is thus the Katy defendants' failure to (1) wait until 6:30 to allow vehicle traffic to enter the festival grounds, and (2) wait until the booths were dismantled before allowing vehicle traffic to enter. But, even assuming these facts

17

to be true, it does not follow that allowing vehicles into the festival area ten or fifteen minutes early was a proximate cause of his injury.

Allender cannot argue that, as a pedestrian, he was caught unaware that vehicles were allowed into the festival area early because he had himself already driven into the area. Thus, he has not articulated—much less offered any evidence about—how letting vehicles into the area before 6:30 (as opposed to after 6:30 as provided by the contracts) caused his injury. The same holds true for his assertion that the Katy defendants were negligent in allowing vehicles in before the booths were completely dismantled. Allender alleges that he was struck by Cooper's car while he was carrying a large metal panel from the booth to his car. Whether the booths were completely dismantled before vehicles were allowed in the area would not change the fact that the vendor contracts contemplated that there would be vehicular traffic in the festival area while vendors are loading their cars, as Allender was doing. In other words, while Allender states the self-evident fact that he would not have been struck by Cooper were their not vehicles allowed in the area, he does not explain—or offer any evidence—that allowing vehicles in before the booths were dismantled in alleged violation of the vendor contracts proximately caused his injury. *E.g.*, *Boys Club of Greater Dallas*, 907 S.W.2d at 477 ("Cause in fact is not shown if the defendant's negligence did no more than

18

furnish a condition which made the injury possible . . . . The evidence must go further, and show that such negligence was the proximate, and not the remote, cause of resulting injuries.").

Because Allender did not present evidence of proximate cause in response to the Katy defendants' motion for summary judgment, the trial court properly granted summary judgment. We overrule Allender's second issue.

## CONCLUSION

We affirm the trial court's summary judgment on Allender's negligence claim against the Katy defendants. We reverse and remand the trial court's judgment on Allender's breach-of-settlement agreement claim.


Sherry Radack
Chief Justice


Panel consists of Chief Justice Radack and Justices Higley and Brown.

19